FRANK HOLTON & CO. v. PEPPER et al.

(District Court, E. D. Pennsylvania. July 7, 1914.)

No. 939.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CORNETS.
    The Holton patent, No. 1,005,972, for an improvement in cornets was not anticipated in the prior art, and discloses novelty and invention; also *held* infringed.

2. PATENTS (§ 72*)—ANTICIPATION—DEVICES DESIGNED FOR OTHER PURPOSES.
    A patent is not anticipated by a prior device because the latter might, by modification, be made to perform the functions of the patented device, where it was not designed nor adapted nor actually used for the performance of those functions.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 86–91; Dec. Dig. § 72.*]

3. PATENTS (§ 167*)—CONSTRUCTION AND SCOPE—ADVANTAGES NOT CLAIMED.
    A patentee is entitled to all of the advantages and new results flowing from his invention, whether stated in his specification or not.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

4. PATENTS (§ 26*)—INVENTION—NEW COMBINATION OF OLD ELEMENTS.
    That a new combination and arrangement of elements that are old produces new and beneficial results is evidence of invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

5. PATENTS (§ 35*)—EVIDENCE OF UTILITY—COMMERCIAL SUCCESS.
    While large sales and general use of a patented invention are not conclusive evidence of its utility, they are facts to be taken into consideration in a doubtful case.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by Frank Holton & Co., a corporation, against J. W. Pepper and H. E. Pepper, doing business as J. W. Pepper & Son. On final hearing. Decree for complainant.

Brown, Hopkins, Nissen & Sprinkle, of Chicago, Ill., for plaintiffs. John P. Croasdale, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. [1] This is a suit for infringement of patent No. 1,005,972, for improvements in cornets, granted October 17, 1911, upon an application filed March 8, 1908. As stated in the application, the invention has for its objects to provide an improved cornet, the scale of which may be quickly and accurately changed from one key to another, such as from B flat to A and vice versa, and in which the tuning slide and the quick-change slide are located entirely to one side of the valve chambers, whereby the cornet will be compact and at the same time permit the bell to be constructed of a length somewhat greater than the length of the bell in the ordinary cornet, thereby improving the resonance of the instrument and the intensity and qualities in general of the notes emitted therefrom, and the further object to provide improved means whereby a portion of the mouth pipe and the connection tube may be cut out to decrease the length to change the instrument to still another key, such as the key of C, for vocal accompaniment. There are two groups of claims involved in the present suit. The ninth and eleventh, forming one group, are claimed to constitute a new combination of which the eleventh may be quoted as an example:

"Claim 11.

"In a wind instrument, the combination of a valve casing, a bell member connected therewith, the extremity of which member projects beyond the valve casing and on one side thereof, a mouth pipe comprising a plurality of sections adjacently disposed, two of said sections being arranged on parallel axes, said axes lying in substantially the same horizontal plane when the instrument is in position for use, others of said sections being disposed above and below the latter, and removable slides connecting each of the two sections which are arranged in the said plane respectively, with the sections above and below the last recited sections, said sections and slides being all disposed in the space between the plane of the outer edge of the bell member and the adjacent valve casing."

Analyzed, the elements of this claim may be enumerated as follows: (1) A valve casing; (2) a bell member; (3) a mouth pipe comprising a plurality of sections adjacently disposed, with two of said sections being arranged on parallel axes lying in substantially the same horizontal plane; (4) other sections being disposed above and below the horizontal sections; (5) removable slides connecting each of the two sections, which are arranged above and below the horizontal sections and all being arranged between the outer edge of the bell member and the valve casing.

The other group of claims comprises 3, 4, 5, and 8, and is distinguished from the first group by reason of the fact that they do not mention the horizontally arranged sections, but do mention an additional connection or substitute slide for use as a C attachment when it is desired to raise the key of the instrument from its normal B flat key to the key of C. Claim 5 illustrates this group and is as follows:

## "Claim 5.

"A valved wind instrument including a bell member and a valve casing, a mouth pipe leading to the valve casing and being shaped to form a plurality of pairs of spaced sections, adjustable and detachable connecting slides joining the extremities of the respective sections of each pair to form a continuous passage for the air through the entire length of the mouth pipe to the valve casing, said slides being located beyond and on the side of the valve casing toward the outlet of the bell, and an additional connection adapted to join one of the sections of one pair with one of the sections of another pair when the first said slides are detached whereby a portion of the mouth pipe intermediate its extremities will be rendered inactive."

This claim may be analyzed as follows: (1) A bell member; (2) a valve casing; (3) a mouth pipe leading to the valve casing and being shaped to form a plurality of pairs of spaced sections; (4) adjustable and detachable connecting slides joining the extremities of the respective sections of each pair, and said slides being located on the side of the valve casing toward the outlet of the bell; (5) an additional connection adapted to join one of the sections of one pair with one of the sections of another pair when the first said slides are detached, whereby a portion of the mouth pipe intermediate its extremities will be rendered inoperative.

All the claims in issue are based, according to the complainant, upon a combination of elements which admittedly are old, but by which it is claimed certain new results and advantages are obtained; that is to say, a cornet is not new, and to provide a cornet with a bell, a mouth pipe, valves, quick-change slides, and tuning slide are not new. A C attachment to raise the key of a B flat instrument to C is not new. What is claimed to be new is the arrangement whereby the four sections of the mouth pipe containing the quick change to A slide and the tuning slide are disposed upon that side of the instrument between the valve piece and the extremity of the bell, whereby the total length of the mouth piece is decreased in length and the length of the pipe thus saved is added to the bell member, thereby improving the tone of the instrument; the arrangement whereby the lower section of the first pair of sections and the upper section of the second pair of sections are upon the same horizontal plane when the instrument is in use by which the instrument is made more compact and easy to handle; and the arrangement embodying the above features by which the quick-change slide and the tuning slide may be detached from their respective bends or crooks, and a C attachment in the form of a bow of definite length may be inserted as a slide in place of these two slides, rendering inactive a portion of the mouth pipe, shortening its length, and raising the instrument to the key of C. The cornets sold by the defendants, American Favorite, No. 1, and American Favorite, No. 2, are infringements if the claims upon which the complainant relies are valid, as they are exact reproductions, or, as stated by complainant's experts, "Chinese copies" of the complainant's patented cornet. The distinction is that the defendants' cornet No. 2 answers every feature in all of the claims sued upon, including those with the C attachment or supplemental slide, while defendants' cornet No. 1 answers all the features of claims 9 and 11 of the patent in suit. The defense is that the sub-

ject-matter of the claims is totally lacking in patentable novelty in view of the prior art, and that therefore the claims are invalid.

In order to sustain the defense of prior art, the defendants have introduced in evidence as an exhibit a cornet which, it is claimed, was made for Herman F. Beyer in July, 1905, and was used by him publicly from July, 1905, to the time of his death in October, 1907. The complainant contends that the Beyer cornet is not an anticipation of the claims of the patent in suit, but, in view of the conclusions reached as to the sufficiency of proof of prior making and use of the instrument, it is not essential to consider that question. The testimony to establish a prior use in the Beyer invention must be discarded as not being of that character to establish it in the mind of the court beyond a reasonable doubt. The proof of its use by Beyer depends upon uncertain and contradictory oral testimony which is based entirely upon the inaccurate memory of witnesses both as to the date of Beyer's use of the instrument and as to what the instrument consisted of that was in existence at any particular date. The circumstances attending the discovery of the instrument years after Beyer's death and the identification of the parts of the instrument, including the copy of the C attachment slide, cannot be said to be evidence so clear, satisfactory, and potent as to leave no reasonable doubt in the mind of the court. At its best it can only be said to constitute an unsuccessful and abandoned experiment and the evidence as a whole is not sufficient to overcome the presumption of the validity of the Holton patent. Washburn & Moen Mfg. Co. v. Barbed Wire Co., 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; Deering v. Winona Harvester Works, 155 U. S. 300, 15 Sup. Ct. 118, 39 L. Ed. 153.

The defendants further rely upon the Lyon & Healy duplex trumpet as evidence of prior art embodying the claims in suit, and have offered in evidence a catalogue issued by Lyon & Healy in 1905, containing an advertisement of the duplex trumpet to establish its use prior to the date of the application for complainant's patent. It is undisputed that this trumpet was known more than two years prior to the application date of the patent in suit. The instrument in question is an A–B flat trumpet. After a careful examination of the exhibits and of the testimony, it must be concluded that the Lyon & Healy trumpet is substantially dissimilar to the Holton cornet, and that it does not anticipate the claims of the Holton patent. It is shown that a trumpet is musically and mechanically a different instrument from a cornet, intended for different uses and constructed to serve different purposes. The bell member is constructed longer and of smaller bore, and the instrument is used where shriller tones are required than in the case of a cornet. The mouth pipe is constructed with fewer convolutions or bends between the mouth piece and the valve piece than is the cornet. In the Lyon & Healy trumpet, an additional valve is provided, which is operated by a lever to change the key of the instrument from B flat to A and vice versa; and, although the bends or crooks are upon the same side of the valve casing as in the Holton cornet, it does not in its construction come within the claims in suit. Claims 9 and 11 of the Holton patent describe an arrangement of the mouth pipe whereby

two intermediate sections are horizontal and the other two sections respectively above and below these horizontal sections connect directly with the horizontal sections in order to provide connections for the quick-change slide and tuning slide, which are immediately adjacent. This arrangement is entirely absent from the Lyon & Healy duplex trumpet. It has no intermediate horizontal sections, but all the sections are arranged in a vertical plane. Moreover the Lyon & Healy trumpet does not meet claims 3, 4, 5, and 8 in which it is provided that, in addition to the two ordinary slides, the quick change to A slide and the tuning slide, there is an additional or supplemental slide designated in the specifications as the C attachment. Neither are there slides in the Lyon & Healy trumpet which are detachable from the sections into which they are fitted by which arrangement in the Holton patent the C attachment may be substituted for these two slides and the key of the instrument raised from B flat to the key of C. It is clearly shown that the Lyon & Healy patent utterly lacks the essential features upon which these claims are based. The most that can be said for the similarity between the Lyon & Healy trumpet and the Holton cornet is that the Lyon & Healy instrument has between the valve piece and the bell a contrivance for changing the key of the instrument from B flat to A and vice versa. This is not accomplished, however, by a detachable quick change to A slide as in the Holton instrument, but by a key slide comprising a fixed member composed of two parallel tubes interposed between portions of the main tube and connected by a short intermediate tube, and a sliding member having short transverse ports adapted to register with the intermediate tube and main tube when the sliding member is in one position, and having an extended passage the ends of which register with the ends of the main tube when said sliding member is in its other position. In other words, it accomplishes the change between A and B flat by means of the U-shaped sliding section which fits into a fixed section set transversely upon the tubing of the mouthpiece and provided with valves, whereby the air is permitted to pass directly through the transverse section for the higher key of B flat, and whereby, upon the further insertion of the sliding member, the direct connection of the tubing is cut off and the air passes through the curve or U-shaped portion of the sliding member. In other words, it accomplishes in a different manner the result obtained by the quick change to A slide of the complainant's cornet. There is no evidence to show that the arrangement in the Lyon & Healy device adds to the bell member of the trumpet in length beyond that of the ordinary trumpet, and it is obvious from an examination of the trumpet that no such result is contemplated or obtained. It is contended on the part of the defendants that the Lyon & Healy instrument contains every element recited in claims 1, 2, 7, 10, and 12, which are not in suit, and that if those claims are invalid the remaining claims with their additional limitations are likewise invalid because these additional limitations are lacking either in novelty or utility.

As to the argument based upon lack of novelty of the additional features, if the combination of the additional limitations in the claims relied upon with the features of the claims not in suit presents a new

combination, then the sustaining of the defendants' contention would strike down every combination patent where the elements are old but the combination and result are new.

[2] As to the argument based upon lack of utility, I think the evidence clearly sustains the useful results set out in the specifications, namely, a compact arrangement of the mouth pipe whereby additional length is added to the bell member, thereby improving the tone of the instrument, and a compact arrangement whereby the quick change to A slide and the tuning slide may be quickly detached and the C slide attached, all upon the same side of the instrument. It will be seen, therefore, that the invention in the Lyon & Healy trumpet is not sufficient to constitute an anticipation of the Holton patent because it might, by modification, be made to accomplish the functions performed by the Holton patent, inasmuch as it was not designed by its maker, nor adapted, nor actually used, for the performance of these functions. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658; Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 422, 22 Sup. Ct. 698, 46 L. Ed. 968.

Moreover, in the Holton patented cornet, it has been shown that the ingenious arrangement, whereby the lower of the first pair of sections and the upper of the second pair of sections are arranged upon the same horizontal plane, furnishes convenient space for holding the instrument in the musician's hand and convenience in packing, which is not present in the older cornets.

[3] It is well settled that the inventor is entitled to all the advantages and new results flowing from his invention, whether stated in his specifications or not. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527.

[4] In conclusion as to the merits of the controversy, while it is sometimes difficult to draw the line between what is a mere result of mechanical skill and what is invention, it is quite clear in the present case that the new combination and arrangement of elements which were old did produce new and beneficial results never, so far as the evidence shows, attained before, and that is evidence of invention. Barbed Wire Patent, 143 U. S. 283, 12 Sup. Ct. 443, 36 L. Ed. 154; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 435, 31 Sup. Ct. 444, 55 L. Ed. 327.

[5] While the evidence of the large sales and general use of the Holton cornet is not conclusive evidence of its utility, yet it is evidence to be taken into consideration in a doubtful case. McGowan v. New York Belting Co., 141 U. S. 332, 12 Sup. Ct. 71, 35 L. Ed. 781.

The answer raises an issue as to the title to the patent in suit. It is alleged in the bill (section 2) that Frank Holton applied for the patent, and that the letters patent, on October 17, 1911, were granted and delivered to Frank Holton. It is alleged in paragraph 3 of the bill that, on the 9th day of March, 1908, Frank Holton, being then the sole owner of the letters patent and all rights and privileges thereunder, assigned and transferred the letters patent to Frank Holton & Co., the complainant, which is a corporation of the state of Illinois. The answer avers that the letters patent were issued in the name of

Frank Holton Company, assignee of Frank Holton, and that Frank Holton Company is not a party to this suit, and that its interest in the letters patent is not shown by the bill of complaint to have passed to Frank Holton & Co. In the absence of proof to the contrary, it is sufficiently established by the evidence that the patent is owned by the complainant, Frank Holton & Co., and by a clerical mistake the "&" was omitted in the grant, and that the correct name of the owner of the patent is Frank Holton & Co. This is not a case of misnomer of a party, and the clerical error in the name of the assignee of the patent is sufficiently established by the evidence.

A decree may be entered in favor of the complainant.