### H. KOPPERS CO. v. OTTO COKING CO., Inc., et al.

(District Court, D. Delaware. January 18, 1919.)

#### No. 348.

1. PATENTS ⏤328—VALIDITY AND INFRINGEMENT—GAS FURNACE AND COKE OVEN.

The Koppers patent, No. 818,033, claims 1 and 5, for a gas furnace or coke oven, *held* valid as disclosing patentable invention, not anticipated, and infringed.

2. PATENTS ⏤328—INFRINGEMENT—REGENERATIVE COKE OVEN.

The Schniewind patent, No. 673,928, for a regenerative coke oven, *held* not infringed.

In Equity. Suit by the H. Koppers Company against the Otto Coking Company and another for infringement of patent. On final hearing. Decree rendered for plaintiff.

Frederick P. Fish, of New York City, Henry Love Clarke, of Chicago, Ill., and Sylvester D. Townsend, Jr., of Wilmington, Del., for complainant.

Francis T. Chambers, of Philadelphia, Pa., Odin Roberts, of Boston, Mass., John E. Hubbell, of Philadelphia, Pa., and Thomas F. Bayard, of Wilmington, Del., for defendants.

ORR, District Judge (specially presiding). This suit in equity is before the court upon final hearing upon proofs taken out of court. The plaintiff charges the defendants with the infringement of claims 1 and 5 of United States patent No. 818,033, issued April 17, 1906, to Heinrich Koppers for a gas furnace or coke oven. The defenses interposed against the Koppers patent are lack of patentable invention,

⏤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

anticipation, and noninfringement. In addition to those defenses, the defendant Otto Coking Company has set up a counterclaim against the plaintiff, alleging infringement by the plaintiff of claim 1 of United States patent No. 673,928, issued May 14, 1901, to Frederick William Charles Schniewind for a regenerative coke oven. To the counterclaim aforesaid, the plaintiff has set up as defenses lack of patentable invention, anticipation, and noninfringement.

[1] Both of the patents above mentioned relate to an art which has been developed in a marked degree in recent years. Furnaces for the manufacture of gas from coal have been used for many years; furnaces for the manufacture of coke from coal have been used also for many years. In the distillation of the coal for the production of the gas, coke was necessarily left as a residuum, usually a soft and spongy product known as gashouse, and sometimes as domestic, coke. It was deemed the by-product resulting from the production of gas. In the distillation of coal for the production of coke, known as metallurgical coke (for there can be no such coke produced, except by distilling out from coal, its volatile constituents), the gases were deemed the by-products and were generally permitted to be wasted. To develop a furnace by means of which all volatile constituents of coal could be utilized, and at the same time metallurgical coke would be produced, became the hope of many who directed their studies to that end. Mr. Koppers must have attained that end, for it appears that over 80 per cent. of all the by-product coke ovens built within the last 10 years in the United States have been Koppers ovens and represent an investment of over $50,000,000. Whether the plaintiff, as owner of the Koppers patent, is entitled to any protection, against competitors who infringe the patent, is the main question in this case.

So far as the record shows, Koppers ovens are built in association with each other; 60 or more being often built side by side. To such group the name "battery" appears to have been given. A battery of ovens is constructed wholly of masonry of heat-resisting bricks, and is about 25 feet high, 40 feet wide, and perhaps several hundred feet long. The whole structure rests upon a cement floor or mat. The coking chambers are in the second story, as it were, of this large structure. Each of these coking chambers is long, high, and narrow, about 40 feet long, or the width of the battery, about 10 feet high and about 20 inches wide. It is charged with about 13 tons of coal from the top. It has end doors, by means of which the coke may be pushed out. In the wall between the coking chambers is a series of heating chambers or vertical flame flues. Within what may be called the first story of the battery are the pillar walls necessary to support the coking chambers. Like the coking chambers, these pillar walls are transverse of the battery. Between these pillar walls are located the regenerators, which directly communicate with the heating chambers or flame flues in the heating walls of the coking chamber. The function of regenerators is to preheat the air or gas before the combustion thereof takes place in the heating chambers. They are built in sets, and the operation is such that the burnt gases resulting from combustion are drawn off through one regenerator for a time, and then

for a like period are drawn off through the other regenerator, with a reversal of the operation at more or less regular intervals. The regenerators are usually filled with fire brick so piled as to leave many interstices of such apparent uniform character as to give the name "checker brick" to the construction. The burnt gases, being drawn off through this checker brick, give it great heat, and when the operation is reversed, the air or gas, as the case may be, admitted to form the combustion in the heating chambers, has been very greatly preheated. In this way, a greater uniformity and intensity of heat is applied to the coal in the coking ovens. To form a pair of regenerators between the pillar walls supporting the coking chambers, a partition wall is provided for, which extends in the same direction as the battery; that is to say, at right angles to the direction of the coking chambers and the supporting pillar walls. In the so-called first story are also pipes for the introduction of the gas, the channels for the introduction of the air, and the channels for withdrawing the waste gases.

The claims of the patent in suit are:

"1. In a coke oven, a series of heating chambers and coking chambers intermediate the heating chambers, combined with a series of regenerators below and parallel to the heating chambers and communicating directly therewith, substantially as specified."

"5. A coke oven provided with coking chambers, two sets of heating chambers intermediate the coking chambers, two sets of regenerators communicating with the heating chambers and arranged below the coking chambers, and a partition between the regenerators, substantially as specified."

This court is unable to find, from the evidence submitted, that the combination of either of said claims is found in the prior art. Heating chambers and coking chambers intermediate the heating chambers, combined with a series of regenerators, are found in the prior art separately and in combination; but regenerators directly communicating and parallel with the series of individual flame flues at the side of each coking chamber in the coke oven battery are not found. Regenerators below and transverse to the heating chambers are old in the coke oven art. The most important creation of Koppers was the "direct, individual flue regeneration," to use a condensed expression of plaintiff's brief.

The Koppers patent, therefore, cannot be held to have been anticipated, or to lack patentable invention. This court is inclined to adopt the language of the Supreme Court in Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428–435, 31 Sup. Ct. 444, 447, 55 L. Ed. 527:

"Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention. But the law has other tests of the invention than subtle conjectures of what might have been seen, and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration."

The acceptance and utility of the Koppers oven seems to be almost a demonstration of its novelty. No other conclusion can be reached than that the Koppers patent is a valid patent.

The question as to whether or not the defendants are infringers needs little consideration. The defendant Otto Coking Company has made, and the defendant Wilputte Coke Oven Corporation intends to make, what they call "Wilputte ovens." The Wilputte oven is so like the Koppers oven that one hesitates to find a difference between them. The defendants have interposed in the regenerators, which are underneath and parallel with the heating chambers, a number of slight brick partitions, with the result that they have a number of small regenerators, which, if the partitions were removed, would together form the larger regenerators of Koppers. When the burnt gases have ceased to flow in the direction of one side of the battery, and by draft are diverted to the other side of the battery, and air or gas is admitted from the side where such flow has been stopped, a number of smaller regenerators operate to do the preheating which the larger regenerator of Koppers would have done. And as the burnt gases are withdrawn by draft from the other side of the battery, they tend to give heat to a large number of small regenerators, instead of the larger regenerator which Koppers has provided. No advantage can be allowed to the defendants by reason of the subdivision of the larger regenerators of Koppers to the smaller regenerators. The defendants' structure has the regenerators directly communicating and parallel with the series of individual flame flues.

The defendants have also taken the position that, because they have devised openings through the pillar walls supporting the coking ovens, and filled such openings with checker brick connected up with the checker brick of their small regenerators, they have constructed their regenerators so that they are not transverse of the battery, but longitudinal thereof. The openings in the pillar walls, after they have been filled with checker brick, are so small that they cannot be deemed of any importance in the defendants' structure. They do not connect the different regenerators, so as to make them one long regenerator running longitudinally of the battery.

A great deal appears in the record with respect to the method used by Wilputte to introduce the air supply, and the method for recovering the waste gas, none of which need be discussed, because they are not really material to the issue. The defendants have not neglected to use the disclosures of Koppers as expressed in his patent. Their ovens, like the Koppers ovens, have regenerators directly communicating and parallel with the series of individual flame flues alongside each coking chamber in the coke oven battery. It should not be urged with seriousness that Koppers did not create that combination and relationship. It appears clearly in the patent. Perhaps it appears even more clearly in the file wrapper of his patent and in the original specification, which, because of its inartificiality, was withdrawn. The conclusion must be reached that the defendants are guilty of infringement of the Koppers patent.

There remains to be considered the counterclaim, which is based upon Schniewind's patent aforesaid. The claim of this patent in controversy is claim 1, which is as follows:

"1. In combination with a series of horizontal externally heated coke ovens having heating flues, as $C$, situated between their walls and partitions, as $D$, $D'$, $D^2$, etc., dividing said flues into a series of combustion chambers connected at top by flue passages, as $D^8$, $d^8$, a series of gas burners, as $G'$, $G^2$, etc., supplying said combustion chambers with gas, a pair of regenerators, as $I$, $I'$, and flues, as $H$, $F$ and $H'$, $F'$, connecting each regenerator with a group of the combustion chambers, as specified, and so that heated air is supplied by one regenerator to one group of combustion chambers and the products of combustion drawn through the other group of chambers into and through the other regenerator."

[2] Inasmuch as we have already held that the invention of Koppers was not anticipated in the prior art, it must follow logically that the Schniewind patent has not been infringed by the Koppers oven. The Schniewind construction rests upon metal vertical columns and cross-beams, and has underneath the superstructure two regenerators, which are placed longitudinal of the battery. There is no direct communication with heating chambers intermediate coking chambers. The first point of combustion in the Schniewind patent is below the plane of the bottom of the coking ovens, and not, as in the Koppers patent, in such plane. The Schniewind combination is not the Koppers. During the life of the Schniewind patent (which has expired) it never met with any marked degree of success, in this country, at least; whereas, the adoption of the Koppers invention has become very widespread. There could not have been in the one the intensity and uniformity of heat which is found in the other, and which is of the utmost importance in procuring the rapid distillation of coal and frequent discharges from the ovens of metallurgical coke. .

From the foregoing considerations, the conclusion is reached that the Koppers patent is a valid patent, that claims 1 and 5 have been infringed by the defendants, and that claim 1 of the Schniewind patent has not been infringed by the plaintiff.

The plaintiff is entitled to relief. Let a decree be drawn in accordance with this opinion.