### DOUGLAS–PECTIN CORPORATION v. ARMOUR & CO.

District Court, W. D. New York. February 1, 1927.

Patents ⬩315—Newly discovered evidence held cumulative and not ground for reopening case.

Newly discovered evidence, claimed to show invalidity of patent, *held* cumulative and not ground for reopening case.

On motion to reopen case. Denied.

For former opinion, see 14 F.(2d) 768.

Arthur E. Sutherland, of Rochester, N. Y., and Melville Church, of Washington, D. C., for plaintiff.

Cromwell, Greist & Warden, of Chicago, Ill., and Louis L. Babcock, of Buffalo, N. Y. (William Navarre Cromwell, of Chicago, Ill., of counsel), for defendant.

HAZEL, District Judge. This is a motion for reopening the case, before entry of decree, to take additional testimony, claimed to be newly discovered, to further enlighten the court regarding the asserted invalidity of plaintiff's patent No. 1,235,666 (application filed April 12, 1915, and granted August 7, 1917), which covers a process for removing turbidity from a pectous concentrate made under Douglas patent No. 1,082,682. Douglas Pectin Corp. v. Armour & Co. (D. C.) 14 F.(2d) 768. An examination of the affidavits does not disclose to the satisfaction of the court that error was committed in holding said patent valid and infringed. Counsel for defendant points out that, in its written opinion, the court emphasized the failure of defendant's expert, Dr. Browne, to make more complete experiments in accordance with the disclosure of bulletin No. 58 in evidence, in that his experiments were made in connection with cold apple pulp and not on boiled solutions. But the answer to this contention is that the conclusion with relation to the validity of the patent was not solely based upon Dr. Browne's testimony or upon any lack of his expert knowledge. The reference was made simply to show that the effect of a diastatic enzyme on a starch and tannin combination, or a boiling pectin concentrate, was somewhat new to him. His testimony was contrasted with that of Dr. Thomas and the witness Bender, who believed firmly that it was not a simple matter to convert a starch and tannin compound into sugar to eliminate the cloudiness of the concentrate. That defendant has discovered, since the trial, that it was old to transform a boiled starch solution with a diastatic enzyme to remove cloudiness caused by the starch, is not of material importance. Anyway it is insufficient reason for reopening the case. After reading the affidavits submitted on both sides, I still think that it was not an obvious thing to remove the turbidity from a pectous concentrate. It was not merely a removal of the turbidity, owing to the precipitation of starch, but the problem was the union of starch with tannin in a pectous liquor. It required invention to do this, even though a diastatic enzyme had previously been used to convert starch into sugar. It was not an old expedient with relation to a solution of the kind with which we are dealing. The experiment of the witness Northcott, to the effect that he used a malt diastase to dissipate the starch in a pectous solution to prevent cloudiness, in 1908, is not enough to warrant granting a rehearing. It does not appear that this was a common thing to do, or that there was a reduction to practice of plaintiff's patent. Nor do I regard that the Atkinson text-book, or the Reichert publication, or the Chemiker-Zeitung article, are sufficient reasons for rehearing.

The problem, as Prof. Bancroft testified, was to discover the cause of the cloudiness in the pectin concentrate. While starch in precipitation, he testifies in his counter affidavit, frequently carries down with it other substances in fruit—a small portion of tannin—he asserts that tannin is ordinarily not looked for as the primal cause of cloudiness and is regarded as a mere incident. The precipitate, the counter affidavits show, was a compound which did not resemble starch.

Dr. Thomas states that the precipitate was a dark brown amorphous material when

samples were examined which had not been treated with a diastatic enzyme, and, he adds, that it was unknown, prior to Douglas' discovery, that starch and tannin in solution reacted to form a precipitate. The several counter affidavits are entitled to weight, and persuasively indicate that there is insufficient reason for taking additional testimony. But it is urged that the claims in issue do not cover a treatment for a starch and tannin compound in a pectous solution. It was not absolutely necessary that they should, in view. of the reference to tannin in the specification, since an inventor, as said in the syllabus of Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527, is entitled to all that his patent fairly covers, although its complete capacity is not set forth in the specification and was unknown to the inventor prior to the issuance of the patent. In that case it was substantially ruled by the Supreme Court that it does not detract from the merit of an inventor that he may not know of all the forces which he has brought into operation, or understand the scientific principles underlying his invention. This enunciated doctrine seems to me to have peculiar application to the Douglas invention, judging, inter alia, by the affidavits of Prof. Bancroft and Dr. Thomas.

Although I have considered all the affidavits submitted on both sides, including the publications and arguments in support of the motion for rehearing, I have become satisfied that the testimony proposed to be given may be fairly treated as cumulative, and that it would not have impelled a different conclusion than that reached on the original hearing.

Motion for rehearing is denied.