## ERSTED v. WILLAMETTE IRON & STEEL WORKS.

Circuit Court of Appeals, Ninth Circuit. November 5, 1928.

No. 5528.

Wilbur, Beckett, Howell & Oppenheimer and T. J. Geisler, all of Portland, Or. (T. J. Geisler, of Portland, Or., of counsel), for appellant.

Carey & Kerr and Charles A. Hart, all of Portland, Or., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The appellant holds patent No. 1,625,769, issued to him on April 19, 1927, for a clutch engaging device, especially adapted for hoisting machines. Alleging infringement thereof by defendant, he brought this suit for an injunction and accounting.

As is usual, the clutch side of the drum in such hoisting machines is normally held out of operative engagement with the drive gear by a coil spring. By means of a lever, the operator effects engagement by causing two helix members or "crowders," resembling opposed saw-tooth collars, to rotate or climb one upon the other, thus forcing the drum into operative contact with the drive gear. The problem was to provide a means of indicating to the operator the force to be applied, in an amount sufficient to effect the engagement, but not so much as to overstrain the parts. This object appellant attains in his invention by means of a partially depressed coil spring mounted upon a bolt adjustably secured at one end to the drum housing. The other end of the bolt, after passing through an eye in the end of an arm on one of the helix members, is fitted with a threaded nut, by means of which the arm is held in contact with the spring, and the desired initial pressure of the spring may be secured and maintained. As a result, the helix so engaged can move only upon the application by the operator of a force greater than the resistance of the depressed spring, and, when he feels the spring yield, he knows that he has applied all necessary pressure to cause the desired clutch engagement.

Holding that there was no infringement or threatened infringement after the patent issued, the court below did not pass upon the validity of plaintiff's patent, but defendant now argues that it is invalid, for the reason that it was anticipated by the Bascom patent of 1905, No. 801,838. In this view we cannot concur. The spring in the Bascom patent does not function to indicate to the "feel" the amount of force required to engage the clutch. On being pressed upon this point, defendant's expert was finally driven to say that, "Well, frankly, this predetermined pressure is unnecessary." But in denying its value the user of an improvement assumes a heavy burden. "The 'tribute of its imitation' is cogent evidence of its utility." Cincinnati Traction Co. v. Pope (C. C. A.) 210 F. 443, 449; Diamond Rubber Co. v. Cons. Rubber Tire Co., 220 U. S. 428, 441, 31 S. Ct. 444, 55 L. Ed. 527. The novelty of plaintiff's device may be within narrow compass, but it is patentable.

It appears that plaintiff first offered to the public his hoist with the improvement covered by the patent in 1924, and during that and the following year, according to his testimony, he sold several thousand machines, and established a national market. Upon each machine was a plate bearing his firm's name and address, the type and model, the serial number, and the words "Patent Applied For." In the early part of 1925, Allison, one of his employees, left his service, and entered that of the defendant, whereupon defendant put upon the market, and sold widely, a hoist substantially identical.

Following the issuance of the patent, plaintiff immediately, on April 19, 1927, gave notice thereof to defendant, and, on June 3, 1927, commenced this action. In its answer to the bill defendant denied that at any time it had made, used, or vended machines embodying plaintiff's invention, or had in any wise infringed the patent. But subsequently, on August 8, 1927, in answer to interrogatories, it admitted that, prior to April 19, 1927, it had made and sold such device, explaining that, upon receipt of notice of the issuance of patent, it had discontinued the manufacture, and had made changes in machines on hand to avoid possible infringement; and that since that date it had not manufactured or sold any equipped with plaintiff's device, except that after such notice it was not able to prevent the sale of all hoists so equipped which were then on the market, and that a few of such hoists were afterwards sold by it.

Upon the trial defendant's president testified that, upon receipt of the notice, it referred the matter to its attorney, who, upon consideration, advised discontinuance of the use of the spring; that about May 15, 1927, it gave instructions to design a machine with-

out the spring, and that by the 1st of June, 1927, it had discontinued use of the spring. "After the patent had been issued (such was the testimony of this witness) and after this suit was filed some of the (defendant's) hoists were sold which were like plaintiff's patent, embodied in his combination." An undisputed specific instance was a sale in May, 1927, of 50 of such used hoists to the Alaska Junk Company. Aside from such sales as may have been made of machines fully equipped with plaintiff's device, defendant concedes that it continued to sell all of the machines it had manufactured which were in stock or in the possession of its distributors throughout the country, without change other than the removal of the coil spring and the substitution in another part of the mechanism of a device intended measurably to perform the function of this spring. As to such machines not in stock, but in the possession of distributors, the evidence does not show that in fact the coil spring was removed and the substitution made of another part, but only that notice was sent out to distributors from headquarters so to do. It is to be added that the spring in plaintiff's device is a very simple and inexpensive part, which may be installed in less than five minutes. It is also true that defendant, in the summer or fall of 1927, caused to be reprinted, with some changes, a booklet or catalogue, advertising and explaining the use of its machine and the parts thereof, and distributed it to the trade. This catalogue contained not only a cut of the set-up machine embodying plaintiff's invention but of the constituent members of the device. To be sure, its president testified that the cuts were carried forward because the catalogue was substantially a reprint of an earlier one, and that no order for such a machine or such parts was honored. It is not without significance in respect to such explanation that, though changes in its catalogue were admittedly made in the price list before it was reprinted, it not only carried the cuts referred to, but in the price list the parts constituting plaintiff's device were enumerated and the prices thereof given. With the subject of

the patent and plaintiff's rights thereunder fresh in mind, it seems strange that, if it desired to act in good faith, defendant, when it made the other changes, should have inadvertently overlooked striking out these items from the list before sending the copy to the printer.

It is further to be stated that defendant never has manufactured a machine of the design it asserts it adopted, after the patent issued, for ultimate or permanent use. It continues to put on the market a hoist embodying all the parts of plaintiff's invention, with the exception only of the easily installed and inexpensive coil spring, which it continues to list in its catalogue.

■■ Without further discussion, we are of the opinion that plaintiff should have a measure of relief. Upon defendant's own showing, he is entitled to an accounting for machines sold by the defendant after notice of patent which embodied in full his device. And, we may add, where, upon an accounting, the evidence shall show that other sales of such machines were made not directly by defendant, but with its encouragement and suggestion through or as a result of its advertising to supply all the parts, or in other ways, the accounting should extend to such sales. In the second place, in view of the fact that defendant had not acted unwittingly, but deliberately, in appropriating plaintiff's device, its admitted sales after notice of patent, its denial of the validity of the patent, its conduct, highly equivocal, to say the least, in continuing to put on the market machines embodying plaintiff's device, with the exception only of the spring, and putting out the catalogue which, among other things, lists the omitted spring, we are further of the opinion that plaintiff was entitled to an injunction, not only against sales of the machine fully equipped with plaintiff's device, but against the use of such catalogue and other means or practices tending to encourage or contribute to the use by others of infringing devices.

Reversed, with directions to take further proceedings not inconsistent herewith.