## In re BATCHER.

No. 2969.

Court of Customs and Patent Appeals.

June 20, 1932.

Walter H. Pumphrey, of New York City (John B. Brady, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The claimed invention involved in this appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner rejecting all the claims, relates to variable condensers designed particularly for use in radio receiving sets.

In a structural sense, the novelty is alleged to lie in the shape given the condenser plates. Two sets of plates are employed, one of which is fixed and the other of which is movable in and out of interleaved relation with the fixed set, so as to change the capacity of the condenser as required.

It is claimed, and conceded by the tribunals of the Patent Office, that the plates are so dimensioned that a change in capacity is produced by a movement of the plates, which capacity is expressed by a differential law set forth in the claims in a certain mathematical equation.

The said equation is set forth in each of the claims, but its repetition here is not essential to an understanding of the legal principles upon which the case is decided, and same is therefore omitted.

There is no serious dispute about the facts.

In the title of the application appellant designates the invention as "new and useful improvements in straight line frequency condensers." It appears that, as a result of the particular shaping of appellant's plates, whenever the condenser is used to tune an electrical circuit including inductance, if angular rotation of condenser be plotted against resulting frequency of the tuned circuit, as shown in a figure of the drawings, the curve plots as a straight line. Hence the "straight line frequency condenser" name.

The references cited are: Wireless World, April, 1914, pages 20–23; The Electrician, February 6, 1914, pages 740 and 741; Principles of Radio Communication (Morecroft), pages 793 and 794.

We reproduce from the brief of the solicitor for the Patent Office (omitting the citations to record pages) the statement of the pertinent disclosures of the aforesaid references:

"The Wireless World publication discloses several variable condensers with 'a square law.' In Fig. 3a a set of rotor plates of semicircular outline is arranged to interleave with a set of stator plates of peculiar shape as shown so as to obtain capacity variation in accordance with the desired 'square law.' Knowing the desired law of variation of capacity, the mathematical expressions are deduced from which the necessary shape of plates is determined.

"The Electrician publication shows in Fig. 3 the form of condenser also shown in Fig. 3a discussed in the preceding paragraph, and gives the mathematical expressions for plate shapes to make the capacity variation conform to the desired law.

"The Morecroft publication shows in Fig. 12 a variable condenser having semicircular stator plates and interleaved rotor plates, with the rotor plates shaped, in accordance with mathematical expressions therein deduced so that the condenser capacity varies, with angular movement, according to a desired law. With a condenser as shown used for tuning a circuit, if angular rotation of the condenser be plotted against resulting wave length, in meters, of the tuned circuit the curve plots as a straight line, as shown by the full line in Fig. 13. Because of this such a condenser has come to be called a 'straight-line wave-length condenser.' "

It was the opinion of the tribunals of the Patent Office that appellant's results were obtained simply by making a mathematical computation and shaping the plates in accordance therewith, and that under the doctrine announced by the Court of Appeals of the District of Columbia in Re Nyman, 58 App. D. C. 186, 26 F.(2d) 558, this did not involve invention, in view of the teachings of the prior art.

Appellant argues that: " * * * Patentable invention is commonly recognized where the only structural difference over the art consists in re-shaping, as, for example, a bullet or projectile, by which it is given increased flight and penetrating power; the hull of a vessel, by which its speed is greatly increased; the wings of an airplane, by which lifting power, speed and stabilization of the plane are increased; a drill, auger or other boring tool, by which its rate of cutting is greatly increased, and so on ad infinitum."

Hirschy Co. v. Wisconsin-Minnesota Gas & Electric, etc., Co., 18 F.(2d) 347, wherein a slight change in a clothes wringer was held by the Fourth Division of the United States District Court of Minnesota to involve patentable invention, is cited, and also the Barb-

ed Wire Patent Case, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154. The Hirschy Co. Case itself made different citations, one of them being Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527, wherein a slight change in the metal rim used on automobile wheels was held patentable.

Appellant also presents as a part of his argument an elaborate opinion by Dr. John H. Morecroft, professor of electrical engineering of Columbia University, in which the latter sets forth his reasons for believing that the Examiner's conclusion that appellant's straight line frequency condenser was an obvious development is erroneous.

Three errors are alleged and argued by appellant, viz., that the Board of Appeals:

"First. * * * Assumed the condenser of appellant Batcher, to be Duddell's condenser of the prior art.

"Second. * * * In assuming Batcher's invention to consist in converting Duddell's wave length condenser scale, by mathematical calculation, into a frequency scale.

"Third. * * * The Board evidently and erroneously assumed that changing the scale from wave length to frequency converted Duddell's condenser into Batcher's."

Upon these allegations of error there are elaborate arguments as to the "variable radio condenser," the "law of capacity variation," "why variable condensers are used in the radio art," etc.; the arguments being illustrated and elucidated at many points by mathematical computations unnecessary to be here repeated.

Appellant's own argument and the opinion of Dr. Morecroft, adopted as a part of the former's brief, challenges with some vigor, not to say asperity, the assertion or presumption as to the expertness in this art of the tribunals of the Patent Office who passed upon the issues there.

We shall only say as to this that the presumption applies, and that when an appeal is taken to this court, the judges of which are not supposed to be, and do not profess to be, experts in the realm of mechanics, the burden rests upon the party appealing to make it clear that the findings of fact by such tribunals are manifestly wrong. Appellant does not convince us that such is the case, nor are we convinced that the doctrine announced in Re Nyman, supra, is either erroneous or inapplicable to the instant case.

It may be here said as to the first error alleged by appellant, supra, that we do not understand the opinion of the Board of Appeals to be in effect that appellant's condenser is the condenser of Duddell. Upon the contrary, the opinion, fairly construed, recognizes the fact, as indeed is stated in appellant's argument, that "one is calibrated in terms of wave length and the other in terms of frequency."

We think there is nothing in the opinion of the board, when same is properly construed, that is inconsistent with appellant's description of the differences between his straight line frequency condenser and the straight line wave length condenser of the prior art.

What the tribunals of the Patent Office held, in effect, was that there was no invention in forming plates to a shape or dimension determined by a mathematical formula known to persons skilled in the art, by which capacity should be expressed in terms of frequency rather than in terms of wave length.

The cases wherein slight changes were held to involve invention cited by appellant, supra, did not involve questions such as are involved in this case.

The Nyman Case, supra, had to do with claims relating, in large part, to the very art here involved. There the court said:

"Appellant * * * contends that the scale in his condenser is arranged according to frequency, instead of wave length, and in a manner which discloses a patentable improvement over the prior art. This is said to be accomplished by a different curvature of the movable plates, so calculated that equal changes in frequency will be obtained by equal adjustments of the dial, thereby eliminating the crowding upon the dial which is said to be characteristic of the straight line wave length condenser, and enabling a 'listener in,' with uniform ease and accuracy, to 'tune in' broadcasting stations over the entire broadcasting range.

"It is noted by the Commissioner that it has become the custom to classify broadcasting stations according to frequency or oscillations per unit of time, instead of wave lengths in meters, as formerly; that this has necessitated a recalibration of condensers and a redesigning and remarking of them accordingly. And the Commissioner finds that the applicant discloses no more than such mathematical calculations and reshaping of the condenser plates as to obtain the variation of capacity which is required in connection with variations in frequency, and which permits of a uniform marking on the dial or scale. The Commissioner adds:

"'It being old to shape the overlapping plates of a condenser so the movements of the

movable member equal distances, which are indicated by equally spaced markings throughout the scale, will vary the capacity in accordance with uniform variations in wave length, it is deemed clear there was involved no inventive concept to shape the overlapping parts of the condenser plates according to a mathematical calculation based upon the unit of frequency, rather than wave length, so these plate movements of uniform distances, which are indicated, as before, at equally spaced markings on the scale, will vary the capacity according to uniform variations in frequency. Except for this change in the shape of the plates to vary the capacity according to a new basic unit, the structure of the condenser does not differ from that disclosed in the references.'

"In our opinion the Commissioner's conclusion is correct. The relation of wave length and frequency of oscillations is so elemental in the art that the adaptation of a scale from one method of designation to the other is merely a matter of calculation, and does not rise to the dignity of invention."

There are some statements in the brief of appellant which induce the belief that he misinterpreted the meaning in which the word "scale" was used by the court in the Nyman Case, supra. It is manifest that, as there used, it was not meant to have the meaning simply of marks and numbers on a dial. It was obviously used in a broader sense, as comprehending a condenser scale with uniformly spaced frequencies requiring correlation of condenser plate shapes with scale markings. In other words, as stated in the brief of the solicitor for the Patent Office: " * * * the court was dealing with plate shapes as well as 'scales,' considered as mere numbers on a dial."

We agree with the tribunals of the Patent Office that the reasoning of the court in the Nyman Case, supra, is applicable here, and it meets with our approval.

The decision of the Board of Appeals is affirmed.

Affirmed.