## PARKER ROTARY STONE SAW CO. v. LANE MFG. CO.

### No. 287.

Circuit Court of Appeals, Second Circuit.
March 20, 1933.

Austin & Edmunds, of Burlington, Vt., (George N. Goddard, of Boston, Mass., of counsel), for appellant.

William N. Theriault, of Montpelier, Vt., and Ellis Spear, Jr., and Edward N. Goding, both of Boston, Mass., for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit for infringement of patent No. 1,293,897 for a stone saw was dismissed below. The patent was applied for June 28, 1918, and granted February 11, 1919. It relates to improvements of saws used in stone or granite cutting. It is a circular type saw with provision for detachable teeth constructed and arranged to cut granite and to add strength and rigidity to the saw.

The invention resides in the novel form of saw teeth and the manner or means of securing the same to the saw body. The saw blade is made from a circular plate forming a polygonal body having at its perimeter a plurality of faces which serve as seats for the saw teeth. Adjacent to its periphery the blade is machined to provide a circumferential rib of uniform thickness between two plane side faces extending from the shoulders concentric to the blade axis. For such of the faces saw teeth of greater thickness than the blade and of substantially rhomboidal shape are provided. The front and back edges are parallel but out of rectangular relations with the inner and outer edges. The angle between the front and inner edges, respectively, of a tooth is cut away to furnish an edge arranged to be juxtaposed throughout its length with the rear edge of the saw tooth next in front. Each saw tooth has at its inner side a longitudinal groove of a width to fit over the blade rib and of a depth preferably equal to the width of the rib radially of the blade. The teeth are secured to the blade by rivets passing through registering holes provided in the plate rib and the bifurcations of the teeth; the rivets being headed in conoidal outer ends of the teeth holes so that the ends of the rivets will be flush or in a plane with the side surfaces of the respective teeth. By cutting away the rivet heads and removing the rivets, any teeth may be removed.

Steel shot is utilized in cutting as an abrading element which, as the saw rotates, is caused, by the slope of the front edges, to be wedged outwardly and to be engaged between the outer teeth edges and the bottom and front of the kerf in which the saw operates. The strains of the teeth tend to tilt the teeth as about the axes of the rearmost rivets; the tilting is restrained by the bearing of the front edges against the rear edges of the adjacent teeth which relieves the rivets of shearing stresses. The patentee claims that making the teeth thicker than the blade gives ample clearance and the blade rim is strengthened by the bifurcations of the teeth riveted thereto in abutting relations throughout the circumference of the blade. .

The elements of claim 1 are a combination embracing (a) a saw blade, (b) plural bifurcated teeth, (c) of rhomboidal shape, (d) having an arcuate outer edge, (e) of greater thickness than the blade, (f) the teeth being connected to the blade by straddling the rim thereof (g) and secured to the rim by rivets (h) so as to dispose of their outer edges concentric with the blade axis. Claim 2 differs from claim 1 principally in omitting "of greater thickness than the blade," while it brings in an additional limitation not found in claim 1 in specifying that the teeth are "in abutting relations with each other."

Prior to this invention, the record fairly shows that the only type of stone saw capable of use in sawing granite was the drag or gang saw. It consisted of a series of parallel longitudinal plates or blades of soft steel set in a horizontal reciprocating sash, the bottom edge of each blade resting upon chilled steel shot which is worked to and fro, as it reciprocated, to grind down or crush the

granite through the abrasive action of the steel shot. Shot was poured into a narrow V-trough formed by divergent boards placed on top of the stone in line with each longitudinal blade. As the blade carrying the sash swings or reciprocates to and fro, it works the shot down into the stone very gradually forming parallel slots or kerfs. The shot is fed into the slot from the top and works its way down around the saw blades to the bottom of the slot underneath the working edge of the saw. The saw blades must be considerably larger than the stone to project beyond each end thereof; the end portions of the blades do not enter the slot, and consequently are not worn away as are the intermediate portions. The blade sinks lower and lower into the stone, and the foreshortening of the pitman-rod stroke causes these high spots at the end to bump against the stone at the end of the slot, and these high spots on the blades have to be burned off to avoid trouble. The blades have U-shaped notches in their edges to hasten the movement of the shot past the blade.

The patentee's saw travels at a speed of 4,000 feet per minute, and it has a capacity for accomplishing four and one-half to five times the work of the previously used gang saws per day. The appellee in its printed circular paid tribute to the operation of the invention by its statement. Plaintiff's Exhibit 16. There it pointed out that:

"Shot can be fed to a gang saw only from the top working downward along the sides of the blades which are of hard steel, and gradually a certain amount gets between the cutting edge of the blade and the stone and this small amount must be relied upon to do the actual cutting. At the same time a cutting action is taking place between the sides of the blades and the stone causing an uneven surface and consuming power to injure the stone rather than cutting it, as desired.

"The next step in stone saws was the upright blade and oscillating type. These cut faster than the gang saw because the shot could be delivered to the cutting edges of the blade. However, owing to the saw blades being only segments, but one-half of this action was effective; that is, they cut in one direction but not on the return.

"About this time one John Hall brought out the Parker rotary stone saw, so-called, having a continuous circular blade with soft steel teeth attached having a rim speed of 3900 feet per minute, and this principle was sound and the only one from which the full cutting benefit can be secured and obtaining full benefit from the power and material consumed. * * *

"Few, if any, manufacturers fully appreciate the range of work which can be done with the Parker Rotary Stone Saw. It is not confined to cutting slabs from a block, although slabs as thin as ½″ in thickness can be taken off and have a perfectly true surface and clean, sharp edges."

It was generally known that an abrasive saw needs a soft-wearing surface for the abrasion, but it was not known the kind of material to use. This inventor's idea was to use soft steel teeth around the periphery of a tough hard steel blade, but a serious question was presented as to whether separate teeth could be secured to such a large blade so as to withstand the severe resistance which the hard granite would oppose to its high speed of revolution. Finding that his first idea of grooving the inside edge of the teeth and milling off the sides of the edge portion of the blade could be cheaply put into practice, the inventor decided to use that method, giving a sufficiently wide overlap of the blade to afford ample room for the large rivets required and further reinforcing the forward end of each tooth against the heavy shearing stresses on the forward rivet, that the resistance of the drag of the stone against the outer edge of the teeth caused, by arranging the rear end of the teeth in front to sustain the outward thrust and to prevent shearing, and thus to avoid disastrous results. This concept had the further advantage of providing a saw of such construction that the teeth could be substantially thicker than the blade, thus permitting the saw to operate at much less expenditure of power and consumption of shot. It made possible the use of soft steel teeth with the blade of a strength to stand up under continuous use.

The evidence shows that a one-piece saw was a failure in sawing granite, and that the Parker construction was a success and was adopted. By a somewhat simple change of construction, the Parker saw attained success. This is sufficient for invention. Minerals Separation v. Hyde, 242 U. S. 261, 37 S. Ct. 82, 61 L. Ed. 286; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Winans v. Denmead, 15 How. (56 U. S.) 330, 14 L. Ed. 717. The rotary abrasive saw, as thus constructed, was new in the art and succeeded in accomplishing a new result. Indeed, the appellee became a licensee under the patent in suit February 21, 1922. The license was canceled on February 5, 1926.

We find nothing in the prior art which suggests the claim of anticipation. The Newton patent, No. 523,862, was not for a stone saw, and the patent to Jackson, No. 585,102, was not for an abrasive stone saw. The patent to Potter, No. 570,564, like Jackson's, was for a rotary saw with diamond studded teeth and quite remote from the patent in suit. The patent to Rossi, No. 1,242,983, we think was not prior art to the Parker invention. It was granted October 16, 1917, on an application filed March 21, 1917. The effort to carry back the date prior to Parker's conception was not successful.

Two types of saws, similar to figures 5 and 6 of Plaintiff's Exhibit 15, are charged to be infringements.

appellee adopted and used a saw tooth shown in Fig. 5 of the same exhibit in which the individual tooth element or member comprised the rear portion of one tooth and the forward portion of the next tooth with an inclined notch or shot pocket partly separating such portions. At first the teeth were thicker than the blade but later, in May, 1929, the appellee made the teeth of the same thickness as the blade.

This latter construction does not infringe claim 1 of the patent, because the teeth are not substantially rhomboidal in shape and are not thicker than the blade. The tooth pieces or tooth members when assembled on the blade form a series of substantially rectangular

**Plaintiff's Exhibit 15.**

*Fig. 5.*      *Fig. 6.*

The teeth of the saw, similar to Fig. 5, were of like shape to those in appellant's patent. These teeth had inner edges slotted to straddle the rim of the blade and were thicker than the blade as shown in the drawings. The adjacent or abutting ends of some of the teeth were in direct contact, and others of the teeth separated by a slight crack. The rear ends of the teeth, instead of inclining to the rear, were cut off square and may have resulted in decreasing the strength of the actual working edge of the teeth from one-half or more, and, in practice, in actually decreasing the cutting capacity of the saw in like ratio. The very wide notch may have been objectionable as leaving too wide a gap between the teeth so that the corner of the on-coming tooth behind such gap would strike against the top corner of the kerf as the stone moved toward the saw, causing the saw to bump. This was the first type of the appellee's construction adopted in 1926. Later, and in the fall of 1928, the

shaped teeth with intervening shot pockets. We think it clear that the saws made as shown in Fig. 5 of Plaintiff's Exhibit 15 do infringe. The saws made with teeth as shown in Fig. 6 do not infringe. By dividing the single teeth into two parts by which the shot is rolled against the opposing surface of the kerf, the appellee no longer has rhomboidal shaped teeth with intervening shot pockets. The appellee has produced evidence in the Rossi patent, which it introduced, which describes the pieces which make up the teeth as "tooth members each carrying two teeth." This is not described as a tooth, but, more correctly, as a tooth member comprising two teeth. As appellee's witness McGovern describes it, "It is a double tooth, that is, two teeth in one." While it is true there is testimony that the appellee did actually sell saws of the type shown in Fig. 5 and also of the type shown in Fig. 6, with teeth which were thicker than the blade, when the saws were

put out, still the latest saws did not have teeth thicker than the blade.

Claim 2 does not specify the teeth to be thicker than the blade but does specify an end to end or abutting relationship between the teeth. We think this claim is also infringed by saws of the type of Fig. 5. They have teeth in abutting relationship. But the teeth made as shown in Fig. 6 are not made in abutting relationship and are not tilted to obtain the advantages claimed for tilting in appellant's saw tooth. Claims 1 and 2 are infringed by the saws made as shown in Fig. 5, but are not infringed by saws made as shown in Fig. 6.

Judgment reversed.