## ROSS et al. v. CHEVROLET MOTOR CO.
### No. 9806.

District Court, D. Colorado.
June 20, 1934.

A. X. Erickson and Emory L. O'Connell, both of Denver, Colo., for plaintiffs.

Robert E. More (of Dines, Dines & Holme), of Denver, Colo., and Cooper, Kerr & Dunham, of New York City, for defendant.

SYMES, District Judge.

This suit involves the validity of patent No. 1,581,292, issued to Harry B. Ross April 20, 1926, application filed April 8, 1925. The plaintiffs, the sole owners, charge that the defendant, Chevrolet Motor Company, is infringing the subject-matter of the patent and threatens to continue. The prayer asks that the patent be adjudicated good and valid, the usual injunctive relief, and an accounting.

The object of the patent is to provide a mechanism by means of which connections may be made between a driving and a driven shaft in such manner as to avoid gear clashing, as is of such frequent occurrence in sliding gear transmissions. It provides, according to the description, a simple mechanism whereby the driving and the driven shafts are brought to the same speed, or approximately the same, before the clutching teeth are permitted to mesh together. A further object is to provide means for embodying a driving and a driven shaft with permanent meshing gears, one of which gears is fixed to its shaft, and the other being loosely mounted on its shaft, a sliding clutch on one of the shafts being adapted to be brought into and out of mesh with the loose gear, and mechanism being associated with the loose gear and the sliding clutch in such a manner that the speeds of the driving and driven parts will be approximately equalized before the sliding clutch is meshed with the loose gear, and to provide means to effect and insure the return of said mechanism to the neutral position when the sliding clutch is unmeshed from the loose gear.

The patent contains seven claims, but at the outset counsel for the plaintiff stated they relied primarily upon claims 2 and 3. They are:

"2. In power transmitting mechanism wherein is provided a driving shaft and a driven shaft, meshed gears on said shafts, one being fixed and the other loose; a shiftable clutch member having toothed recesses to receive the teeth of said loose gear when moved into engagement therewith, means including a floating male clutch element associated with said loose gear and with a clutch face on said shiftable clutch element to bring said shiftable clutch element and loose gear to approximately the same speed of rotation before engaging the clutch element and gear.

"3. In power transmitting mechanism wherein is provided a driving shaft and a driven shaft, meshed gears on said shafts, one being fixed and the other loose; a shiftable clutch element having toothed recesses to receive the teeth of said loose gear when moved into engagement therewith, means associated with said clutch element and with said loose gear to bring them to approximately the same speed of rotation before engaging the clutch element and gear, said means including friction surfaces cooperating with a steep lead screw."

In this memorandum I will state very briefly the reasons for the findings of fact and conclusions of law handed down herewith, all of which must be read in connection with the patents, drawings, and exhibits. The trial has proceeded on plaintiffs' admission that, if claims 2 and 3 are not infringed, the others are not.

Theoretically the mechanism involved is useful in all types of power transmission machinery, in which it is desired to change at will the gear ratios between an engine connected driving shaft and the driven shaft connected to the machine to which the engine power is finally translated. Practically, however, the mechanisms involved are the gears and the shifting mechanism inclosed in the gear box of the modern automobile.

Up to five or six years ago the shifting of the gears of the commercial automobile, involving the meshing or the engaging of the jaw teeth of the different sets of gears, was not automatic. It depended upon chance and the skill of the operator. The methods used were not foolproof, and the operation, whether the shift was up or down, caused some clashing. Furthermore, an element of time was involved, as well as a slowing down of the moving parts. The operation required the meshing of a gear on the driving shaft with one on, or connected with, the driven shaft. The two shafts and the gears rotate axially in the same direction but at different speeds, and the nonclashing meshing of any two sets cannot occur, except by chance, unless they are rotating in the same direction at approximately the same speed.

The principle involved and the end sought by the many experimenters in the art, unsuccessfully for many years, is denominated synchro-meshing; that is, mechanisms which, in the shifting of automobile gears, for instance, cause the two gears selected to be automatically brought to the same speed before one is permitted to contact the other. When this is attained, the two sets of jaw teeth slip together, or one over the other as the case may be, almost automatically and without clashing. Many commercial cars and trucks are equipped with some form of synchro-mesh mechanism that varies more or less in mechanical details.

What these "synchro-mesh" devices do, each in a different way, is to prevent, when the operator of the automobile throws out his clutch and moves the shifting lever, the two gears from contacting until their speed has become approximately the same, whereupon the device ceases to operate, or "throws out," and the power exerted by the operator causes the teeth of the gears to engage, or slide over,

each other. Reference is made to the plaintiffs' patent for a detailed description of the construction and operation of the so-called Ross device.

Briefly, he provides a sliding clutch with a female clutch face to interlock with the loose gear when brought into mesh; that means, according to the drawings, that the internal teeth of this female clutch slide over the loose gear. Next he provides a worm gear friction clutch device, acting between this loose gear and the sliding clutch. This causes the rotation of the gears to be retarded or regulated until such time as they are in a position to mesh without clashing. This worm gear is known and discussed as a steep lead screw, and performs the function of guiding the device that is mounted on it, denominated 18 in the drawings, until enmeshment results.

Next there is provided a positively acting means to insure the retention of the worm gear friction clutch element in its normal or disengaged position when the sliding clutch is in the withdrawn position. This refers to the pins marked 28 on the drawings, which bring back the member 17 and 18 when the shift lever is moved. These are not described in claim 2 nor 3, but may fairly be said to be included in the "means" upon reference to the drawing.

The only difference between claims 2 and 3 is the addition in the latter of this language: "Said means including friction surfaces cooperating with a steep lead screw." The term "steep" is used to describe the angle between the threads and the axis of the shaft on which they are cut. The screw is the only part of the many that go to make up the plaintiffs' device that is entirely new. It keeps the clutches and the small synchronizing element apart until there is synchronization, whereupon they slide out of position. In this device the two moving parts are brought to the same speed, or made to synchronize by the braking or resisting effect of the friction surfaces, the action of which varies directly with the difference of speed of the moving members to be synchronized. They cease to function when synchronization has occurred.

■ The proof establishes that the Ross device will accomplish after a fashion what is claimed for it, when it is desired to shift from a low to a high gear; at least to the extent that it is very helpful and obviates to a considerable degree the elements of chance and skill otherwise involved. But when it is desired to shift downward, that is to say, from high speed to second, it will not operate as claimed. There is some evidence that it will cause

a "locking out" of the gears; that is, not only will not help, but will positively prevent, the engagement of the gears required to complete the latter operation. Plaintiffs' experts would not say that the Ross device operates on the downward shift, but his counsel claim that, by putting an additional set of threads on the screw running in the opposite direction, the down shift operation can be accomplished satisfactorily, and that this idea is within the claims of the Ross patent, because it does not involve inventive genius, but only a mechanical change or improvement.

If the inventor had this thought in mind, he kept it to himself and did not make a full disclosure. Nothing is said in the claim about two sets of threads, and we are not impressed by the argument, nor convinced by the proof, that an additional set of threads on this screw, so as to make the shifting of gears in the opposite direction possible, is within the fair intendment and teaching of the patent. No such construction was embodied in any of the numerous exhibits displayed at the trial, and it has not been demonstrated that such a screw has ever functioned as claimed.

■ The Supreme Court in Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, at page 436, 31 S. Ct. 444, 448, 55 L. Ed. 527, says: "He must, indeed, make such disclosure and description of his invention that it may be put into practice. In this he must be clear. He must not put forth a puzzle for invention or experiment to solve, but the description is sufficient if those skilled in the art can understand it."

To make such an inclusion in the patent would, in my opinion, give Ross a monopoly on an addition to his construction that he has not described. That might easily amount to the difference between its commercial success and failure. His counsel admit the statement found in the descriptive matter of the patent, that the device would synchronize in either direction, is unwarranted. It calls for a liberality of construction that the law does not favor, especially in a situation where, as here, the invention constitutes only a slight advance in a crowded field. If the inventor was a pioneer in the art, or the patent "basic," the argument might be more persuasive.

To put it another way: If Ross merely sought to substitute for one of the constituent parts of his invention an instrumentality known in the prior state of the art to have the same capacity in kind as the thing for which it is substituted, and which did not alter the functional relationships, then such a

substitute might be a legal equivalent for that which it has displaced. Electric Railroad Signal Co. v. Hall Railway Signal Co., 114 U. S. 87, 5 S. Ct. 1069, 29 L. Ed. 96. But, in the case at bar, the substitution of a new screw with an additional set of threads running in the opposite direction, and not known in the prior state of the art, would, in my opinion, alter the "functional relationships." The use of a screw with two sets of threads gives to the device a new capacity. It enables it to discharge a new function by a new means, and the variation is one of substance that amounts to a new invention.

■■ The doctrine of equivalents does not apply where the substitution of a new part enables the mechanism to do something that it would not do but for the substitution. As stated in Columbia Motor Car Co. et al. v. Duerr (C. C. A.) 184 F. 893, at page 908: "Its description must explain the invention itself, the manner of making it, and the mode of putting it in practice. In the absence of knowledge upon these points, the invention is not available to the public without further experiments and further exercise of inventive skill."

Applying this rule to the case at bar, a skilled mechanic could not, by merely reading the patent, construct the device therein described to shift in both directions.

■■ On the question of the prior art the evidence is not satisfactory. True, Prof. Upton described clearly and interestingly devices similar in many respects found in some fifteen or twenty prior patents cited, all of which have a synchronizing enmeshment device designed to avoid clashing and forced enmeshment, some dating back to 1871. Generally speaking, however, these devices have been successful only when the features of two or more have been combined with other improvements, as illustrated by the Albert patent, No. 1,866,614, owned and now used extensively by the defendant. It is a significant fact that this device was not used by the defendant until it was improved by the addition of the cocking spring, as is the fact that the Ross and Albert applications were pending in the Patent Office at the same time.

To establish anticipation against Ross, it is not enough that the experts say the problem was a simple one, and that these prior patents' disclose devices for synchronizing. As stated in Diamond Rubber Co. v. Consolidated Rubber Tire Co., supra, these experts speak with knowledge acquired after the event (page 435 of 220 U. S., 31 S. Ct. 444, 447, 55 L. Ed. 527): "Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention. But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration."

■ Ross describes and includes a sliding clutch, with a female clutch face to interlock with the loose gear. A worm gear friction clutch device acting between the loose gear and sliding clutch, and also a positively acting means to insure the retention of the worm gear friction clutch element in its disengaged position. None of these parts exist in the defendant's device. These facts and the reasons advanced by the defendant in support of its allegations that its device can be distinguished from Ross' and does not infringe apply with equal force to these prior patents.

■ A presumption of invention attaches to a patent where a device possesses sufficient change from the prior art to receive approval of the Patent Office. Diamond Rubber Co. v. Consolidated Rubber Tire Co., supra; Radio Corporation of America et al. v. Radio Engineering Laboratories, Inc. (May 21, 1934), 54 S. Ct. 752, 78 L. Ed. 1453.

■ Furthermore, Albert made his application in April, 1924, and it is conceded his invention was made in the February preceding. Ross did not apply until April, 1925, a year later. This date binds him in the absence of satisfactory proof of an earlier date of invention.

Findings of fact and conclusions of law are handed down herewith. If counsel desire for purposes of appeal, they may formally submit requested findings and conclusions, which will be formally denied.