:50 CCPA
**Application of Joseph E. JENDRISAK.**

**Patent Appeal No. 6925.**

United States Court of Customs and Patent Appeals.

May 16, 1963.

Rehearing Denied June 28, 1963.

Smith and Rich, Judges, dissented.

Malcolm R. McKinnon, Robert L. Boynton, Harness, Dickey & Pierce, Detroit, Mich., James L. Dooley, Cushman, Darby & Cushman, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Com'r of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 9 through 11, and 22 through 29 of appellant's application [1] for a patent entitled "Method and Apparatus for Bending Glass Sheets or Plates." Claims 13 through 21 have been allowed.

Claims 9 and 25 are representative of the appealed claims and read:

"9. In a bending mold for bending glass sheets, a center mold section comprising a pair of spaced rails, an end mold section comprising spaced rail portions movably mounted adjacent each end of said center section for movement from an open spread-apart position to a

---

[1]. Serial No. 579,271, filed April 19, 1956; described as a continuation of Serial No. 235,293, filed July 5, 1951.

closed position wherein said end section rails and center section rails together form a substantially continuous shaping surface for forming a glass sheet to a predetermined curvature, a pair of shafts mounted for rotative movement, means connecting a shaft to each of said end sections and extending outwardly therefrom for moving the same from the open to the closed position, and a weighted arm mounted on said shaft outwardly of the mold section for rotating said shaft.

"25. In a bending mold for bending glass sheets, a fixed mold central section comprising a pair of spaced rails, a movable mold section mounted adjacent each end of said fixed central section and comprising spaced rail portions aligned with and forming substantially continuations of said central section rails, said movable mold sections being movable from an open spread apart position prior to bending to a closed position during bending, and means for moving said movable mold sections from the open position to the closed position, said means comprising a first weight, means connecting said weight to one of said movable mold sections for movement in a substantially vertical plane, a second weight, and means connecting said second weight to the other movable mold section for movement in a substantially vertical plane, said weights being disposed above the horizontal when the movable mold sections are in the open position."

The claims are directed to apparatus for bending glass sheets into severe curvatures to produce one-piece wrap-around windshields for automobiles. Appellant discloses a hinged, sectional, glass-bending mold including horizontally spaced supporting members or rails forming a fixed central section. Similarly formed end sections for the mold, curving sharply upwardly from the central mold section and converging to a point at each end, are joined by hinges and short intermediate rail elements to the rails of the fixed central mold section. The end sections of the mold are swung outwardly on the hinges to open the mold and permit placing therein a flat sheet of glass which is to be bent. The sheet of glass is then engaged by a ledge at the apex of the rails at each end of the mold.

For swinging the mold end sections toward each other to a closed position, a transverse shaft is connected to each end section by a toggle lever arrangement and an arm with an adjustable weight is secured to each transverse shaft. When the end sections are moved to open position to receive a flat sheet of glass, the arms are moved upwardly toward a vertical position to exert a relatively small clamping force on the flat sheet. Either a link arrangement or a gear and rack arrangement is associated with the transverse shafts for the two end sections to insure equal swinging movements of the end sections and equalize the force which the weighted arms exert on the two sections.

In use, the weighted arms are lifted to open the end sections, the flat glass sheet is disposed in place with one end in the crotch at the apex of each mold end and the arms are released to exert a clamping force on the sheet. As the glass sheet is heated and softens, it sags and the weighted arms move from a position approaching the vertical, where they exert a relatively small force, down and through a substantially horizontal position where they exert a greater force.

The following references were relied on by the examiner and the board:

| | | |
|---|---|---|
| Sage | 682,570 | September 10, 1901. |
| Connington | 760,959 | May 24, 1904. |
| Galey | 2,330,349 | September 28, 1943. |
| Smith | 2,518,951 | August 15, 1950. |

A Thompson patent, relied on cumulatively to Sage by the examiner and by the board, appears in the printed record. However, counsel for appellant and the Solicitor have stipulated that said patent is not prior art against the application because it issued on an application filed subsequent to the effective filing date appellant is entitled to because of his parent application.[2] Thus that patent has not been considered by us.

The Sage patent discloses glass bending apparatus comprising a block having a cavity of the desired shape at the top of the block. One end of a flat sheet of glass is clamped in position over the cavity, and, upon heating, the sheet settles into the cavity with the free end of the glass sliding down a sloping guiding surface extension of the cavity. A pivoted arm having a weight thereon provides the pressure for clamping the end of the glass sheet.

The Connington patent discloses glass bending apparatus for bending large sheets of glass. The apparatus includes a plaster of paris bending mold which has a curved bending face into which the intermediate portion of a sheet of glass will sink when softened by heating. A side section or rack is hinged at each end of the central mold for bending the sides of the sheet of glass upwardly. A weight is connected to each rack through a chain or the like extending over a pulley to apply a force tending to swing the rack about an angle bar serving as its hinge when the glass softens upon heating.

The Galey patent relates to apparatus for bending sheets of glass. That apparatus comprises an upright frame having an upwardly disposed concavity and two swinging supports which extend across the concavity between the end sections adjacent the sides of the frame. The supports are pivoted on the end sections to swing about parallel, horizontal axes and are curved transversely. Weights are attached to the inner edges of the supports tending to swing their outer edges, which are flanged, toward each other against the opposite edges of a glass sheet with a force tending to bend the sheet when it is softened by heat. The concave upper edges of the frame and the identically curved concave surfaces of the supports form a substantially continuous curved surface imparting a predetermined curvature to the glass sheet when the supports have completed their movement.

The Smith patent discloses glass bending apparatus comprising a frame-like, hinged, sectional mold suspended from a supporting frame by links at the four corners of the mold. The mold is made in sections, including U-shaped end sections joined by intermediate members to a central section. The sections are curved downwardly from each end of the mold to form a narrow, continuous shaping surface which engages only the marginal area of a glass sheet. Locator blocks at each end of the mold position the ends of the glass sheet in the mold and hold the sheet in place during the bending operation. With the end sections of the mold forced away from each other into an open position, a flat sheet of glass is inserted between the locator blocks. As the glass sheet becomes softened on heating, it sags in the middle and settles against the shaping surface of the mold.

The examiner rejected the claims as unpatentable over Galey, Smith or Connington in view of Sage, reasoning that weight means as shown in Sage could be used to move the movable mold members of Connington and Galey.

In sustaining the examiner's action, the board held that persons of ordinary skill in the art cognizant of fixed center mold structures as taught by Galey or Connington would find it obvious to follow such teachings in connection with a mold of the type shown in Smith. It further held that the use of the weight actuating structure as set out in the appealed claims would be no more than an obvious substitution for like gravity

2. See footnote 1.

actuation systems in Galey and Connington.

Appellant contends that "the prior art does not disclose or even remotely suggest the Appellant's concept and that the prior art patents * * * would have to be modified in vital respects in order to obtain the structure, manner of operation and results obtained by the structure defined in the appealed claims, and that there is no suggestion whatsoever in the prior art that such modifications ought to be made or how to make them."

The issue is whether the subject matter of the appealed claims is obvious over the prior art and, in particular, whether the Galey, Connington and Sage patents teach modifying the Smith structure as held by the board.

While Smith shows a sectional mold in which end mold portions are hinged to a center section and moved by force of gravity from an open spread-apart position to a closed position forming substantially a continuous shaping surface defining the shape to which the glass is to be bent, the center section of that mold is not stationary. However, the use of a fixed center mold section with weights connected to pivoted end mold sections for swinging the latter sections from open to closed position as the glass sheet is heated and softened is suggested by both Connington and Galey. We think those references would readily suggest to a person of ordinary skill that the center mold section of Smith be made stationary and weights be used to operate the end sections.

Certain of the claims, including representative claims 9 and 25, define an arrangement of weights different from Connington and Galey for applying force to the mold end sections. Thus Connington utilizes a weight attached to a chain running over a pulley and Galey attaches weights directly on the movable mold sections at points spaced from their pivot points. While Sage does not involve application of force from a weight for bending glass, it does show the use of a pivoted arm with a weight to be known means of applying a force. Moreover, Galey's weight, which is connected directly on the pivoted end mold section, constitutes in effect, a weight carried by a lever. On the basis of those showings, we think it would be obvious to a mechanic of ordinary skill to use a separate lever with attached weight for applying a bending force to movable end sections of a mold.

Claim 23 specifies that the weight-supporting lever arm is movable from a relatively high to a relatively low position as the mold section moves from a low to a high position, while claim 25 specifies that the weights are disposed "above the horizontal" when the movable mold sections are in open position. No patentable significance is seen in such recitations. If the weight is to act through gravity to apply a bending force to close the mold, it obviously must move from a relatively high position to a relatively low position. In Galey the weights for the movable mold sections are shown disposed above the horizontal with respect to the pivot points. We think adjusting separate weight-carrying arms in the same manner would be an obvious expedient to a person of ordinary skill in the art.

Appellant's application discloses using a weighted arm adjusted to degree of angularity and position of the weight to apply a minimum thrust on the unheated and unbent glass sheet and a proportionally increasing thrust on the softened glass as it settles into the mold and indicates that application of the bending force in that manner is desirable in bending thin sheets of glass. However, that feature has no bearing on the claims here in issue. The conditions that the weight carrying rod is movable from a "relatively high" to a "relatively low" position, or that the weights are disposed above the horizontal when the mold sections are in open position, obviously do not inherently result in the weights acting with a progressively increasing force from open to closed position of the mold. If the arms carrying the weights move from a position slightly

above horizontal when the end sections are open to one far below horizontal when the end sections are closed, the maximum force is applied at a position where the movable sections are only slightly displaced from fully open position and the force applied by the weights constantly decreases from that position until fully closed position is reached. In fact, those conditions correspond to those which result with respect to the weights on the movable mold sections of Galey.

The decision is affirmed.

Affirmed.

SMITH, Judge, with whom RICH, Judge, joins (dissenting).

The rejection affirmed by the majority opinion is based upon a hindsight reconstruction of the prior art references in the light of appellant's disclosures and, as such, reaches a result with which I am unable to agree. I think the strict admonition of 35 U.S.C. § 103 requires that obviousness must be determined "at the time the invention was made", and this precludes the type of prior art reconstruction relied upon by the examiner and approved by the Board of Appeals and the majority here.

An initial point of divergence arises from differences in the analysis of "the subject matter as a whole" for which a patent is here sought. It is clear to me that the majority opinion proceeds from the assumption that the subject matter as a whole is but an arrangement of parts selected from the prior art to form an apparatus for bending glass. In my view the "subject matter as a whole" involves more than this. Before the apparatus in issue could be constructed someone had to know and understand the problems which it was designed to solve. Thus, it is appellant in his specification, rather than anything found in the prior art patents, who points out the problem which the prior art structures failed to solve. Appellant states:

"Briefly stated, this invention is concerned with the supporting and bending of glass sheets, into severe curvatures which may closely resembles a U-shape in elevation; on hinged type open molds. Molds of this type have previously been used for simple bends, and it has been customary to locate and support flat glass sheets only at their opposite ends on such molds, to then bring the sheets to the proper bending temperature and to allow them to freely settle into conformity with the shaping surface of the mold.

"However, to produce curved shapes of the U-shape or other more complex nature, requires a somewhat different procedure than the conventional ones commonly employed to produce bent glass of a relatively simple curvature.

"Moreover, with the advent of the increasingly popular 'one-piece' windshield, it has been found that the materially longer, and usually thinner, glass sheets will not withstand the mass weight of the hinged mold when it is allowed a normal freedom of bending influence. * * * *"

To solve the problem which the prior art posed, appellant discloses further:

"According to the present invention, the mold of the improved apparatus is so constructed that endwise forces may be directively applied to the glass sheet or sheets in a progressive manner to first support and then to actually fold the ends of the sheet inwardly as the major portion thereof settles into registering support on the shaping surface of the mold.

"It is an aim of the invention to provide an improved bending apparatus which includes a hinged mold that is adapted to support glass sheets while flat and to subsequently carry them into final bent shape, while closing to present a properly contoured shaping surface for the glass, together with means coacting with the mold to effect movement of the glass to the shaping surface

by application of a progressively increasing force.

"Another object is the provision, in a method of bending glass sheets or plates and an improved apparatus therefor, of a bending mold of the open ring, hinged construction wherein sections of the mold are oriented in a balanced open position to receive a glass sheet when flat and are adapted to be moved toward their closed position with progressively increasing force to carry the ends of the glass sheet into bent conformity with the mold shaping surface at the end of the bending operation."

Appellant summarizes his invention in his brief as follows:

"* * * In accordance with the present invention, improved apparatus for bending glass sheets is provided which includes a stationary central section and hingedly related end sections together with means which coacts with the end sections of the mold to initially balance the end sections of the mold and support the glass sheets when the flat glass sheets are first placed therebetween so as to reduce to a minimum the stresses imposed on the cold, relatively stiff and brittle sheets, and which means is automatically operable as the glass softens in the bending furnace to raise the movable end sections to bend and shape the glass sheets to their final configuration. * * *"

I agree with the position of appellant that the prior art does not disclose or suggest the appellant's concept and that the prior art patents cited by the examiner and relied upon by the Board of Appeals would have to be modified in vital respects in order to obtain the structure, manner of operation and results obtained by the structure defined by the appealed claims. There is no suggestion in the prior art that such modifications ought to be made or how to make them. Thus, it seems to me that the rejection is based on a hindsight reconstruction of the art which can be made only *after* appellant's disclosure.[1] This is not the test required by 35 U.S.C. § 103, namely, that obviousness be determined "at the time the invention was made".

In Diamond Rubber Company of New York v. Consolidated Rubber Tire Company, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527, the Supreme Court stated:

"* * * Many things, and the patent law abounds in illustrations, seem obvious after they have been done, and, 'in the light of the accomplished result,' it is often a matter of wonder how they so long 'eluded the search of the discoverer and set at defiance the speculations of inventive genius.' Pearl v. Ocean Mills, 11 Off. Gaz. 2. Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention. * * *"

The sole question is whether the appealed claims define an invention unobvious over the combined teachings of the cited prior art. It is my opinion that they do.

As pointed out by appellant:

"Claims 9 and 22–29 each call for a fixed or stationary center section and contain the limitation that the shaping rails of the end sections form continuations of the shaping rails of the fixed center section to form a substantially continuous shaping surface."

The patents to Sage, Connington and Galey do not teach or disclose a fixed

1. This type of rejection brings to mind Milton's lines in Paradise Lost, Book VI: "Th' invention all admired, an each how he to be th' inventor missed; so easy it seemed once found, which yet unfound, most would have thought impossible".

or stationary center section comprising spaced shaping rails in combination with end sections which have shaping rails that form continuations of the center section shaping rails to form a substantially continuous shaping surface. The patent to Smith in no way utilizes a fixed center section and if an attempt were made to modify the center section of this patent to make it rigid or fixed, the Smith mold would be inoperative since the center sections must be movable since its weight is utilized to move the end sections of the mold upwardly toward the center section of the mold.

Claim 9 also calls for a pair of shafts mounted for rotative movement, means connecting a shaft to each of the mold sections and extending outwardly therefrom for moving the same from the open to the closed position, and a weighted arm mounted on the shaft outwardly of the mold sections for rotating the shaft. Such a structure is not suggested by any of the references. I do not find any teaching that means could or should be provided connecting a rotatable shaft to each of the movable end mold sections. Inasmuch as there is no disclosure of any rotatable shafts having means for connecting them to end mold sections and extending outwardly therefrom for moving the same from the open to the closed position, the suggestion for such changes appears to have had its origin in appellant's disclosure. There is nothing in the prior art which teaches or suggests that the end sections be mounted on rotatable shafts which can be rotated by the weight means shown by Sage, thus providing a positive and controlled movement of the movable end sections from the open to the closed position.

Claim 22, as well as claim 23 which depends therefrom, and claim 27 not only call for a fixed center section and movable end sections formed of rail portions, but also call for means connecting the weight to the movable mold section to move said section from a first relatively low position to a relatively higher position. Claims 22, 23 and 27 also contain the further limitation that the movable mold sections are mounted for rotation about a fixed axis. In my opinion, the prior art patents do not teach or suggest such a combination of features.

Claim 23 further calls for a pivotally mounted rod, while claim 24 not only calls for means mounting the movable mold section for movement about an axis of rotation nearer the innermost ends of the movable rail portions than the outermost ends, but also calls for a movable mounting rod.

Claim 26 refers to the embodiment of the invention disclosed in Fig. 1 and, in addition to the other limitations, points out that the outermost shaping surfaces 32 of each of the plurality of movable shaping surfaces is pivotally mounted outwardly of its innermost end upon an adjacent movable shaping surface. No such structure is disclosed or suggested in any of the references.

In addition to the other limitations, claims 28 and 29 each call for a fixed rail section, and movable rail sections comprising converging rail portions, as well as means for moving the movable sections from an open position to a closed position where the movable rail portions form substantially a continuation of the rail portions inwardly thereof.

All of the appealed claims thus seem to me to patentably distinguish the present invention from the prior art.

The concept of doing a thing, the result of which is new and useful, must be considered along with the actual steps of doing it when considering the question of obviousness of the invention as a whole. When this is done here, it is my considered view that appellant's claimed invention as a whole was not obvious to one of ordinary skill in this art at the time the invention was made. For this reason, I would reverse the decision of the Board of Appeals.