**ROOT–LOWELL MANUFACTURING COMPANY, Plaintiff,**

v.

**STANDARD CONTAINER COMPANY, Defendant.**

Civ. A. No. 599.

United States District Court
M. D. Georgia,
Valdosta Division.

Dec. 30, 1964.

Cam U. Young, Valdosta, Ga., David S. Kane, New York City, for plaintiff.

Powell, Goldstein, Fraser & Murphy, Atlanta, Ga., Brumbaugh, Free, Graves & Donahue, New York City, for defendant.

BOOTLE, Chief Judge.

Pursuant to plaintiff's Petition for Reconsideration this court's memorandum opinion of November 27, 1964, filed November 30, 1964, is hereby withdrawn and the following entered in its stead. While changes are being made in only a few instances, perhaps a complete re-

writing will promote facility in reading and understanding.

Root-Lowell Manufacturing Company, an Ohio corporation having its principal place of business in Lowell, Michigan, brings this action charging an infringement of Claims 2, 3, 5, 6, 7 and 9 of United States Letters Patent No. 2,639,-192 issued May 19, 1953 and acquired by assignment from Lowell Specialty Company by Standard Container Company, a Georgia corporation. The complaint prays for a preliminary and permanent injunction restraining the defendant and those in privity with the defendant from infringing or inducing others to infringe the patent in suit, for an accounting of damages arising by reason of defendant's infringement of said patent and for an award of costs including reasonable attorneys' fees. Defendant answered the complaint alleging that it had not infringed upon the rights of the plaintiff under Letters Patent No. 2,639,192 and that said patent was invalid for lack of invention. Defendant also prays for costs and reasonable attorneys' fees

Plaintiff is engaged in the design, manufacture and sale of spraying equipment, including the hand operated, intermittent type sprayer used for the spraying of insecticides of the class represented by the device of the patent in suit. The defendant also manufactures, among other things, spraying equipment, including its "Hot Shot" insecticide hand sprayer, several of which are charged to infringe the claims of the patent in suit. Due to the advent of the aerosal spray bomb on the domestic market subsequent to World War II, the inventors of the patent in suit undertook the task of designing an intermittent sprayer that would "help retain our position production wise in the intermittent hand sprayer against the low pressure aerosal bomb." They were concerned primarily with accomplishing two things, namely, to conceive and design an intermittent hand sprayer which would emit or dispense more insecticide with each stroke of the pump and to conceive and develop a product which would be more effective from the standpoint of emitting a spray droplet the size of which would correspond to that of the aerosal bomb and therefore give a greater kill per discharge of insecticide. The inventors claim they developed a sprayer entirely new in the intermittent sprayer field which utilizes the elements of an interior siphon tube, a sealed liquid reservoir chamber adjacent to multiple spray orifices, an air baffle member with an opening located above its center median and a flared pump cylinder cooperating with a flared baffle member for flexing the pump washer. This structure was subjected to efficiency testing and the results of the tests established that the patented structure dispensed more fluid in a finer spray and was generally more effective in operation than the older type intermittent sprayers (exposed siphon tube type) used in the test. It should be noted here that the patented structure was not tested against all existing models of intermittent sprayers. From 1950 through 1963, over five million sprayers of the type embodying the disclosure of the patent in suit have been manufactured and sold by plaintiff and related companies.

## QUESTION OF VALIDITY OF PATENT

Since the defendant has raised the defense of invalidity, the court will first address itself to the issue of whether the patent in suit is valid or invalid for lack of invention. Defendant has introduced into evidence a group of patents [1] which have now expired and are in the public domain which it contends demonstrate that the patent in suit is lacking in patentable invention. Plaintiff has attempted to analyze and distinguish this prior art in order to establish that it does not anticipate the patent in suit. Our procedure here will be to take each

1. These patents are: Nelson Patent No. 1,851,588; Brandt Patent No. 1,792,804; Fitch Patent No. 1,891,325; Vogel Patent No. 2,123,029; Vogel Patent No. 2,- 054,106; Vogel Patent No. 2,178,088; Vogel Patent No. 2,194,339; Fitch Patent No. 2,233,161.

claim of the patent in suit and compare it with the prior art, to determine whether the prior art incorporates the specific designs called for by the claims of the patent in suit.

The alleged invention of the patent in suit, as set forth in the claims here at issue, is a narrow one directed to the particular features of the nozzle jet assembly which plaintiff contends produces certain very desirable operating characteristics for the sprayer. The claims of the patent in suit call for a plurality of aligned and spaced jet spray openings in the outer and inner cap members of the spray head or cap assembly. Prior art shows that a plurality of laterally spaced and aligned apertures is old. Both Fitch Patent No. 1,891,325 and Nelson Patent No. 1,851,588 claim a plurality of transverse spray orifices. Plaintiff attempts to distinguish Fitch Patent No. 1,891,325 on the grounds that it is an old type intermittent sprayer having a siphon tube positioned in advance of the pump cylinder, without a fluid reservoir and allows the air coming from the pump to escape around the siphon tube, thus rendering the device highly inefficient. This distinction ignores the fact that this patent was offered solely for its teaching as to plurality of spray apertures. Consequently, this claim must be considered to be a matter of choice or design and not an invention. Moreover, plaintiff's witness, William Dickison, a co-patentee of the patent in suit, conceded on cross examination that the patent in suit did not originate the concept of having more than one spray jet in a sprayer.

The claims call for a confined liquid chamber which is defined as being substantially "T-shaped" and as a "transverse and horizontally arranged elongated chamber", located immediately adjacent to the outer cap member and between the outer and inner cap members of the cap assembly, its purpose being to supply insecticide to be atomized and discharged through the spray jet apertures. Plaintiff's witness testified that the patent in suit did not originate the idea of having a specially prepared liquid chamber. He did testify that he thought the patent in suit was original in the idea of having a specially prepared liquid chamber for a multi-jet sprayer. Prior art, Vogel Patent No. 2,194,339, Vogel Patent No. 2,233,161 and Vogel Patent No. 2,178,088, teaches the concept of a confined liquid chamber located adjacent to the outer cap member of the cap assembly. In these patents the chamber was of annular shape in each instance and was not a transverse and horizontally arranged elongated chamber as in the patent in suit. Clearly, the concept of having a confined liquid chamber adjacent to the outer cap member of the cap assembly is found in the prior art and the shape of the liquid chamber in the patent in suit is a matter of design and judgment as distinguished from invention. Changing the form of the annular shaped chambers found in the prior art into a transverse and horizontally arranged elongated chamber is not invention unless the change in form also involves a change in the mode of operation, function or result. See Walker on Patents § 32 (1937). Plaintiff contends that the T-shaped liquid chamber is unique when compared with the prior art in that it retains some amount of insecticide in the liquid chamber during the complete pumping operation, including the back stroke of the pump, and that this uniqueness is attributed to the shape of the liquid chamber. Plaintiff contends further that this retention of some amount of insecticide in the chamber during the complete pumping operation is an inherent property of its patented structure and that on the question of patent validity it is entitled to have this function of its invention considered although neither the claims of the patent in suit, nor the specifications contain as much as an intimation that the form of the liquid chamber is to serve the purpose of retaining insecticide throughout the pumping operations. This contention will be dealt with later.

The claims of the patent in suit teach that the outer and inner cap members of the cap assembly are nested within one another providing the confined transverse and substantially "T-shaped" liquid chamber discussed above. Nesting here means an interlocking of the three cap members resulting from the snug fitting of their cylindrical flanges. It seems to the court that the manner in which the liquid chamber is created by this nesting of the cap members is a matter of judgment and not invention. Vogel Patent No. 2,178,088 and No. 2,194,339 disclose the formation of an annular liquid chamber by a cup-shaped outer cap member in which an inner cap member is inserted and the conformation of the inner and outer cap members being such as to form an annular chamber between the two members, the inner cap member being inserted and fitted within the outer cap member and held therein by frictional fit. Fitch Patent No. 2,233,161 similarly teaches the formation of a liquid chamber by the placing of a cup within the end cap of the spraying head, said cup being frictionally fitted therein. This prior art is referred to merely to illustrate the different designs and methods utilized in the past in forming a liquid chamber by means equivalent to the claimed nesting.

An indexing means to aid in the proper assembly and alignment of the spray apertures of the outer and inner cap members is claimed by the patent in suit, said means being the embossing of three dimples in each of said two plates so that the top of the dimples on the inner plate fit snugly into the bottom of the dimples on the outer plate. Whether or not the prior art anticipates the indexing means claimed in the patent in suit, and assuming arguendo that this specific indexing means is novel, the court holds that it is not invention. See 35 U.S.C.A. § 103; Walker on Patents § 24 (1937). The defendant indexes the outer and intermediate wall members by utilizing a diamond-shaped struck-up portion in both walls which is provided with opposite angles on the horizontal axis of a lesser degree than the angles on the vertical axis, thus making it impossible to incorrectly assemble the parts. This diamond-shaped struck-up portion of the walls is the full equivalent of the dimples used by plaintiff and the two indexing means operate substantially the same way to produce the same results.

The patent in suit claims an air chamber located behind the liquid chamber from which air chamber air is delivered to the spray jet openings. This air chamber is formed between the inner cap member and the baffle member. Vogel Patent No. 2,194,339 and Fitch Patent No. 2,233,161 claim an air chamber which is located adjacent to the liquid chamber. Fitch Patent No. 2,233,161 is more like the patent in suit in that it has the corresponding baffle member, which forms one wall of the air chamber. Plaintiff contends that the air chamber with the air opening located in the upper portion of the baffle member serves to distribute the air to all the spray jet apertures under equal pressure, though the substance of this contention is not to be found in the claims or specifications of the patent in suit. In view of the prior art, it seems clear that the air chamber claimed by the patent in suit is not an invention.

An air opening in the baffle member which permits the air from the pump cylinder of the sprayer to enter the air chamber, and which is above the horizontal median line of the baffle member is claimed by the patent in suit. The patent in suit also claims that the air opening in the baffle member being located above the spray apertures in the outer and inner cap members prevents the suction of liquid from the liquid chamber into the cylinder through the air aperture on the back stroke of the pump. To locate the air opening in the upper portion of the baffle member cannot be given any patentable weight in view of Brandt Patent No. 1,792,804, which shows this to be old. Also Vogel

Patent No. 2,194,339 teaches that the air openings leading into its air chamber were effective in preventing liquid from being drawn into the piston or pump chamber and anticipates that other forms of apertures might be equally as effective. In the Vogel Patent one of the air openings was located in the upper portion of the baffle member.

Finally, the patent in suit claims a baffle member provided with an outwardly and forwardly inclined and flared surface, spaced inwardly from a similarly inclined or flared wall portion of the cylinder, and providing a spreader for expanding at the end of each stroke and while the sprayer is at rest the cup packing carried at the forward end of the pump plunger. Vogel Patent No. 2,233,161 claims an inwardly extending conical portion (baffle member) directed toward the piston for contact with the piston to spread the wall of the piston against the wall of the cylinder when the piston is brought into contact with said conical portion. Although Vogel Patent No. 2,233,161 does not have a flared cylinder wall as is the case in the patent in suit, the court thinks it anticipates the claim of the patent in suit.

Having found that all the claims of the patent in suit were anticipated by the prior art, except possibly the unique indexing means not amounting to invention, this court must now turn to the issue of whether the patent in suit combines these elements disclosed by the prior art in such a way as to produce a new and different function, use or operation than that theretofore performed or produced by the prior art. See Lincoln Engineering Company v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008, 1010 (1938); Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). To support the patent in suit as a valid combination the plaintiff has referred to several features which it classifies as new and different. Plaintiff asserts that none of the prior art or testimony in this case so much as suggests that the location of a liquid reservoir immediately adjacent to a plurality of spray jet apertures was known before the patent in suit. As previously pointed out the idea of having a plurality of spray jet apertures and the location of a liquid chamber immediately adjacent to a spray jet aperture were claimed in several expired patents. True, none of them combined a plurality of spray openings and a liquid chamber located adjacent thereto. But this court is of the opinion that the differences between the subject matter of the patent in suit and the prior art are such that the "subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C.A. § 103.

■■ Conceding arguendo plaintiff's legal contention that on the question of patent validity it is entitled to the benefit of a function not mentioned in the patent claims or specifications, see Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527 (1911); Eames v. Andrews, 122 U.S. 40, 56, 7 S.Ct. 1073, 30 L.Ed. 1064 (1887); Georgia Kaolin Co. v. Thiele Kaolin Co., 228 F.2d 267 (5th Cir. 1955); Fyr-Fyter Co. v. International Chem. Ext. Corp., 270 F.2d 23 (5th Cir. 1959); Simplex Piston Ring Co. of America v. Horton-Gallo-Creamer Co., 61 F.2d 748 (2d Cir. 1932); Novadel Process Corp. v. J. P. Meyer Co., 35 F.2d 697, 702 (2d Cir. 1929), we find that plaintiff's patent is invalid even after giving consideration to said function. Even in combination patents, as in all others, the key to patentability is presence or lack of invention, and the function of a patent is to add to the sum of human knowledge. Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 150, 152, 71 S.Ct. 127, 95 L.Ed. 162, 166, 167. There must be a new and useful result. 69 C.J.S. Patents § 68, page 300. It is a well known fact that water flows down hill. It is not surprising that a liquid chamber elongated and

level with only one drainage outlet drains more slowly than a liquid chamber funnel-shaped feeding the liquid into the outlet. Moreover the possible usefulness of the retention of "some" liquid in the chamber between the rapid strokes of the pump thus providing a "charge" or "semi-charge" (R. 74) for the succeeding stroke in a series of rapidly recurring strokes is not of sufficient substantiality to rise to the dignity of invention. As the Supreme Court said in the Great A. & P. Tea Company case, supra, at page 152, 71 S.Ct. at page 130, "This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned * * *." The new result contended for is not a big enough step to be rewarded with a patent. Cerruti v. Stinson Aircraft Corporation, 23 F.Supp. 387, 390 (E.D.Mich. 1938), affirmed 110 F.2d 1007 (6th Cir. 1940).

■ Another new and useful feature which the plaintiff contends the patent in suit presents is its increased efficiency. Plaintiff introduced evidence indicating that the patented structure did show an increased efficiency when compared with the older exposed siphon tube type intermittent sprayer known as the "Flit Gun". Significantly, this test did not compare the patented structure with other types of intermittent sprayers on the market. One such sprayer was that produced under Fitch Patent No. 1,891,325. In the Fitch patent it is stated:

"It is found in practice that the improved device of my invention practically doubles the spraying effect as compared with the effect obtained with the well-known sprayers, for instance the type of sprayer now in use for spraying the product known as 'Flit'. With each forward movement of the piston, the quantity of fluid drawn up and sprayed is greatly increased and at the same time the fluid is more effectively broken up and reduced to a very fine mist or vapor. Owing to the volume and density of the fine mist or vapor, the insects, even

the more alert and hardy ones, are entrapped so that they are destroyed before they are able to escape into atmosphere free of the insecticide."

In view of the increased efficiency claimed in Fitch, and the limited tests to which the patented structure was subjected, this court does not feel it can hold the combination patent in suit valid on the ground of increased efficiency. Having thus considered the plaintiff's contentions, this court concludes that the patent in suit does not as a combination produce a new and different use or function and that it is therefore invalid for the lack of invention.

## QUESTION OF INFRINGEMENT

Defendant has made and sold three types of intermittent sprayers, PX 5, PX 6 and PX 7. PX 5 is made in accordance with the drawings of Vogel Patent No. 2,961,170, and PX 6 and PX 7 in accordance with the drawings of Vogel Patent No. 3,056,560. The only difference between PX 6 and PX 7 is that in PX 6 the air hole from the pump chamber into the inner air chamber is above the center line of the sprayer, whereas in PX 7 the air hole is in the center of the end wall plate or baffle member. The structure of the plaintiff's commercial sprayers of the intermittent type PX 10, 11, and 12 respond to the structures set forth in claims 2, 3, 5, 6, 7 and 9 of the patent in suit and perform the same function in the same manner as do those structures. The structures found in the sprayers of the defendant PX 5, PX 6 and PX 7 are identical with the structure shown in the patent in suit and set forth in the claims here at issue and perform the same function in the same manner as do those structures, except that defendant's structures have a *diamond-shaped* liquid chamber and not a *T-shaped* liquid chamber, there being only a T-shaped or ribbed protuberance on defendant's diamond-shaped liquid chamber with the bottom part of the diamond acting as a funnel and except that defendant's structures do not accomplish any retention of liquid in the liquid chamber between

strokes of the pump or during the complete pumping operation. In plaintiff's sprayers the outer wall is nested with respect to the intermediate wall. In defendant's sprayers the outer wall member is nested with respect to the intermediate wall.

The language of claims 2, 3, 5, 6, 7 and 9 of the patent in suit applies to the defendant's accused sprayers PX 5 and PX 6 and if said claims were valid said accused sprayers would normally infringe them. If, however, we should be wrong in deciding that the retention of liquid in the liquid chamber between pumping strokes is patentably inconsequential, and should plaintiff's patent be held valid because of that function, then clearly none of defendant's structures infringe plaintiff's patent. There can be no infringement of a patent for a combination unless the combination is infringed and in order to constitute infringement of a patent for a combination there must be substantial identity in means, operation and result. 69 C.J.S. Patents § 301, page 872; Remington Rand, Inc. v. Meilink Steel Safe Co., 140 F.2d 519 (6th Cir. 1944); Pennington Engineering Co., v. Houde E. Corp., 136 F.2d 210 (2d Cir. 1943). The language of claims 2, 3 and 9 of the patent in suit applies to the defendant's accused sprayer PX 7 and if said claims were valid said accused sprayers would normally infringe them. However, as above stated, if we should be wrong in deciding that the retention of liquid in the liquid chamber between pumping strokes is patentably inconsequential, and should plaintiff's patent be held valid because of that function, then clearly none of defendant's structures infringe plaintiff's patent. As plaintiff concedes, PX 7 would not infringe claims 5, 6 and 7 because said claims specifically require that the transverse plate of baffle member have an air passage "in the upper portion" thereof, whereas defendant's PX 7 has the hole in dead center.

The prayer of each side for the allowance of attorneys' fees is denied. Costs will be taxed against the plaintiff.